**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No.  7:08-cv-207 |
| | § | |
| 1.71 ACRES OF LAND, more or less | § | |
| situated in STARR COUNTY, TEXAS; | § | |
| and CITY OF ROMA, et al., | § | |
| Defendants. | § | |
| | § | |

**THE UNITED STATES' BRIEF REGARDING A SCHEDULING ORDER**

The United States of America respectfully requests that the Court enter a scheduling order that allows it immediate possession of the subject property, but respects the landowners' rights to fully litigate the amount of just compensation to which they are entitled.   Granting this request would be appropriate for multiple reasons.  First, immediate possession fulfills the first purpose of the Declaration of Taking Act.  Second, although the United States gave all required information to the landowners in this case (including a survey), transfer of possession should not hinge on the United States' production of more detailed information.  Third, consultation concerns are not a defense to the takings.  Fourth, just compensation need not be resolved prior to the transfer of possession.  Finally, under Fed.R.Civ.P. 71.1(c)(3), the only appropriate deadline for naming interested parties in a condemnation action is at the hearing on just compensation.

**<u>Introduction and Summary of Argument</u>**

The United States is entitled to possession of a property subject to condemnation once defeasible title is acquired.  In this case, the United States acquired title with its filing of a declaration of taking and deposit of estimated just compensation.  The United States now seeks

1

possession to implement Congress' directive to secure the United States-Mexico border.  Disputes over compensation, negotiation, and consultation are not a defense to the taking, and they should not  delay the transfer of possession.  Prioritizing these disputes would thwart the purposes of the Declaration of Taking Act.  However, with possession granted, the parties can turn to the resolution of outstanding title and just compensation issues.  These issues are typically complex and may require more time to resolve than that allowed in the recent Brownsville scheduling orders.

**Argument**

I.    **Allowing the United States to Take Possession of the Subject Properties Will Fulfill the First Purpose of the Declaration of Taking Act.**

The United States requests a schedule that allows it to efficiently fulfill the purpose of the Declaration of Taking Act: to permit the expeditious transfer of title, money, and possession in federal condemnation cases.  As the Supreme Court held in *United States v. Miller*,

> [t]he purpose of the statute is two-fold.  First, *to give the Government immediate possession of the property* and to relieve it of the burden of interest accruing on the sum deposited from the date of taking to the date of judgment in the eminent domain proceeding.  Secondly, to give the former owner, if his title is clear, immediate cash compensation to the extent of the Government's estimate of the value of the property.

317 U.S. 369, 381 (1943) (emphasis added).  The Declaration of Taking Act, 40 U.S.C. § 3114, gave the United States a means to acquire immediate title to and possession of properties needed for public use in a "quick-take" condemnation, unlike the more protracted "straight-condemnation" procedure provided in the General Condemnation Act, 40 U.S.C. § 3113.  *Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1 (1984).   The Court "may fix the time within which, and the terms on which, the parties in possession shall be required to surrender possession" to the United States.  40 U.S.C. § 3114 (d)(1).   The United States respectfully urges this Court to do so now.

Withholding transfer will not improve the Defendants' ability to receive just compensation,

2

nor will it facilitate the parties' ongoing efforts to negotiate in accordance with the Illegal Immigration Reform and Immigrant Responsibility Act ("Illegal Immigration Act").  In contrast, delay in securing possession will frustrate the United States' ability to secure the border as mandated by Congress; further, withholding possession may cause the United States to incur significant monetary damages and will hamper its ability to complete the border security infrastructure project by the congressionally imposed deadline of December 31, 2008.

A.   *The Declaration of Taking Act Explicitly Severs the Transfer of Possession from Controversies over Valuation.*

Crucially, the Declaration of Taking Act provides discrete mechanisms for providing possession to the United States and ensuring just compensation will be paid to the landowners.

> It was the particular purpose of the [Declaration of Taking Act] to sever the taking of title and possession from controversies as to valuation, and to provide a procedure whereby the United States might be speedily and conclusively vested with title and possession, with authority to demolish existing structures on the condemned land, leaving the issue as to the amount of compensation to be determined in subsequent proceedings.

*Puerto Rico Ry. Light & Power Co. v. United States*, 131 F.2d 491, 484 (1st Cir. 1942); *accord United States v. 1.04 Acres of Land (Tamez)*, 538 F. Supp. 2d 995, 1002–03 (S.D. Tex. 2008) ("The DTA . . . created a procedure to expedite the taking of title and possession of lands to enable the United States to begin construction work before final judgment.").

The sharp distinction between the immediate transfer of possession made possible under the Declaration of Taking Act ("DTA"), 40 U.S.C. § 3114, and the additional hurdles required under the National Gas Act ("NGA"), 15 U.S.C. § 717f(h), is instructive:

> In a DTA case the government exercises its right to immediate possession with minimal judicial oversight. Title and the right to possession vest in the government immediately upon the filing of a declaration and the requisite deposit. *See* 40 U.S.C. § 3114; *Kirby*, 467 U.S. at 4-5. *Although the district court fixes the time and any terms of the possession, the government takes possession of the condemned property*

3

*as a matter of course, unless the landowner or occupant demonstrates some undue hardship that warrants a delay.*

*E. Tenn. Natural Gas Co. v. Sage*, 361 F.3d 808, 826 (4th Cir. 2004) (citing cases) (emphasis added).[11]  Absent *undue hardship*, immediate possession is proper *as a matter of course*.

> B.    *The United States' Has a Right to Seek Immediate Possession and Withholding or Otherwise Delaying Possession Will Significantly Harm the United States.*

The courts have almost exclusively focused on balancing the equities in reported cases addressing the orderly transfer of possession under the Declaration of Taking Act – specifically, irreparable economic impact upon the former owners in relation to the United States' need for immediate use of the property.  *See United States v. 162.20 Acres of Land*, 639 F.2d 299, 303 (5th Cir. 1981) (Garza, J.) ("federal courts do not second-guess government agencies on issues of necessity and expediency").

In *United States v. Certain Land in Manhattan*, 332 F.2d 679, 680 (2d Cir. 1964),  the General Services Administration found that buildings adjacent to the construction site of a new federal facility had shifted and become dangerous to inhabit.  The building tenants argued that the shifting of the buildings had stopped, and asked for additional time to vacate. *Id*. at 681. The Second Circuit allowed the lower court to hold a hearing regarding the condition of the buildings and to craft "terms" which would allow tenants additional time to vacate the properties, with the caveat that the government would be held harmless for any claims arising from the continued occupancy. *Id*. at 682. The critical fact was that the United States did not need the properties immediately for the project,

---

[1/] In contrast, "[i]n a condemnation case under the NGA, a gas company that seeks immediate possession has a much stiffer burden than the government does under the DTA."  *E. Tenn. Natural Gas Co. v. Sage*, 361 F.3d 808, 826 (4th Cir. 2004).  As the Fourth Circuit explained, "[b]ecause title in an NGA case does not pass until compensation is determined and paid, *see Danforth v. United States*, 308 U.S. 271, 284-85 (1939), the company's motion for immediate possession triggers a threshold requirement. The district court must determine that the company has the right to condemn the property in question."  *Id.*

4

but instead condemned due to serious public safety concerns.  Here, in contrast, possession of the subject property is needed now to meet Congress' mandate.

Meanwhile, in *United States v. 6,576.27 Acres of Land*, 77 F. Supp. 244, 244-45 (D.N.D. 1948), the Army Corps of Engineers condemned a permanent interest in farmland to be inundated by the closing of a dam on the Missouri River.  The landowners asked that transfer of possession be delayed to allow them to continue farming.  *Id*. at 245.  At a hearing the government conceded that the land would not be inundated immediately but stated that the agency needed a right of entry onto the land at the present time to prepare for the flooding.  *Id*.  The court thereupon provided for a right of entry, pursuant to the provisions for an orderly transfer of possession, by allowing the former landowners to continue farming the property for the remainder of the year, so long as the use of the property "will in no way impede or hamper the government in its construction of the . . . project." *Id*. at 218.  The instant case is critically distinct because the United States requires immediate possession here in order to fulfill its congressional mandate.  *Cf. United States v. Fisk Bldg.*, 99 F. Supp. 592, 595 (S.D.N.Y. 1951).  Transferring possession to the United States here will not result in hardship to the Defendants.

In the above-cited cases, the United States did not need possession immediately.  Those courts gave the landowners additional time to vacate the properties with the proviso that the United States was not hampered in its projects.  Here, there is no need to delay the transfer to preserve farming or similar economic interests.  Moreover, the United States will be harmed by any delay.

## II.     Negotiation Concerns Do Not Comprise a Defense to the Takings and Should Not Stall the Transfer of Possession to the United States.

Concerns over the extent of negotiations provide neither a legal defense to the taking nor justification for delaying the transfer of possession. This Court only needs to find that the United

States concluded the parties would be "unable to agree", thus necessitating condemnation.  *See* 8

U.S.C. § 1103(b)(3).

A.    *Judicial Inquiry Into Negotiations Under 8 U.S.C. § 1103(b)(3) Is Limited.*

The sole statutory basis for educing of a "bona fide negotiation" requirement in these border

fence condemnation cases is the "unable to agree" provision of 8 U.S.C. § 1103(b)(3).  The statute

provides in pertinent part:

> (1) The Attorney General may contract for or buy any interest in land, including
> temporary use rights, adjacent to or in the vicinity of an international land border
> when the Attorney General deems the land essential to control and guard the
> boundaries of the borders of the United States against any violation of this chapter.
>
> (2) The Attorney General may contract for or buy any interest in land identified
> pursuant to paragraph (1) as soon as the lawful owner of that interest fixes a price for
> it and the Attorney General considers that price to be reasonable.
>
> (3) When the Attorney General and the lawful owner of an interest identified in
> paragraph (1) are unable to agree upon a reasonable price, the Attorney General may
> commence condemnation proceedings. . . .

Construing a provision in another federal condemnation statute that is substantively identical

to § 1103(b)(3)'s "unable to agree" provision, the Supreme Court held that such a provision is

reasonably interpreted "to mandate nothing more than a factual determination [by the condemning

authority] that the parties will not be able to reach agreement through further negotiations."  *Nat'l*

*R.R. Passenger Corp. v. Boston & Me. Corp.*, 503 U.S. 407, 423 (1992) (construing 45 U.S.C. §

562(d)).  The Supreme Court rejected the contention that § 562(d)(1) "demands [the acquiring party]

engage in 'good faith . . . negotiations' before it may invoke its condemnation powers." *Id*.

Likewise, § 1103(b)(3) is reasonably interpreted only as a requirement that, prior to filing

suit, the United States factually conclude that further negotiations will not create an agreement as

to the property's purchase price.  The United States reasonably made that conclusion here.

Defendants cannot show that the subsequent condemnation reflects an "unreasonable decision, or will-of-the-wisp determination." *United States v. 2,606.84 Acres of Land*, 432 F.2d 1286, 1290 (5th Cir. 1970).

      B.     *Transferring Possession Will Not Affect the Parties' Capacity to Negotiate a Possible Settlement, and Defendants Were and Are Fully Able to Fix a Price for Their Own Property.*

The United States need not supply the basis for or decision-making behind its offer to purchase and estimate of value of the subject property; instead, it is incumbent on Defendants, who are presumed familiar with their own property, to know or prove its value. While the United States has sought to answer Defendants' questions about the taking, the burden is upon the defendants to prove the value of just compensation. *United States ex rel. Tenn. Valley Auth. v. Powelson*, 319 U.S. 266, 273 (1943). Indeed, § 1103(d) makes clear that it is the landowner who is to "fix" a reasonable price to which the Attorney General can agree. The statute allows the United States to purchase property for the border security project "as soon as *the lawful owner . . . fixes a price for it*" and the United States considers that price reasonable. 8 U.S.C. § 1103(d).

      1.     *Explanation of Pre-Suit Negotiations and Larger Parcel Definition*

In the schedules established for the sixteen similar cases in Brownsville, the Court ordered the United States to provide a description of the parent tract and a breakdown of the pre-suit offer. However, at this early stage, where the United States has neither possession nor the benefit of discovery, Defendants likely have *better* access to information defining the larger parcel – such as ownership and use information – than the United States. Thus, Defendants can negotiate with or without the benefit of the United States' breakdown of pre-suit offers or its current opinion of the larger parcel or parent tract.

Further, Defendants have the right to present evidence of a larger parcel different from that

offered by the United States.  *See United States ex rel. Tenn. Valley Auth. v. Powelson*, 319 U.S. 266, 273 (1943).  Defendants are fully capable of assessing the diminution in value, if any, to the larger parcel for purposes of fixing a price for negotiation.  Moreover, since the amount of the deposit is not a justiciable issue, then the method used to determine the amount of the deposit is irrelevant, and should not be open to discovery.  The production of such information is not legally required (especially at this early stage before trial experts have been proffered).  Thus, lacking this information is neither a defense to a taking nor a justification for stalling the transfer of possession.

       2.      *Metes and Bounds*

Similarly, although the landowner in this case has been provided survey information on the subject property, a legal descriptions is not necessary for negotiations and it is certainly not a pre-requisite to possession.  The United States' description of the property interests here, and in the other similarly situated cases, is more than sufficient to identify the property interest as required by Rule 71.1(1)(2) (requiring simply "a description of the land taken that is sufficient to identify the land") and the Declaration of Taking Act, 40 U.S.C. § 3114(a)(2)(C)(2)(C) (requiring "a description sufficient to identify the property").[2]  As in the other cases before the Court, the legal description (Schedule "C") and the map or plat (Schedule "D") included in the Declaration of Taking

---

[2] Federal law does not require a "metes and bounds" description.  In these federal condemnation cases, federal law and not state law controls.  Since the adoption in 1951 of Rule 71A of the Federal Rules of Civil Procedure (now Rule 71.1), procedural as well as substantive matters in federal condemnation cases are controlled by federal law.  *1.04 Acres of Land*, No. 1:08-cv-44, slip op. at 4-6; *see also Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 3–4 (1984); *United States v. 93.970 Acres of Land*, 360 U.S. 328, 333, n.7 (1959); *cf.* V.T.C.A. Property Code § 21.012 (Despite the Texas statute's apparent applicability to condemnations by the United States, only federal procedural law controls when the United States brings a condemnation action, as here.).  Tellingly, there does not appear to be a single case in which a federal condemnation action was dismissed for an inadequate legal description.  *Cf. United States v. 100.01 Acres of Land in Buchanan County, Va.*, 102 F. App'x 295, 2004 WL 1381721 (4th Cir. 2004); *United States v. 39.20 Acres of Land in the Counties of Williams, etc., N.D.*, 143 F. Supp. 623 (D.N.D. 1955).

adequately describes the parcel to be acquired.  *See* Doc. No. 2-2, Schedules "C" and "D."

Although a metes-and-bounds description derived from an on-the-ground survey may more accurately delineate the area taken, that specificity is not required for filing.  This is so even if a less accurate description results in the parties being unable to agree to "price", as has occurred in situations where the location of a well or irrigation valve relative to taking lines is initially unclear.

## III.    Consultation Concerns Do Not Create a Defense to the Takings and Should Not Stall the Transfer of Possession to the United States.

The consultation provision of 8 U.S.C. § 1103(b) provides no defense to the taking and explicitly declines to alter the condemnation laws of the United States; as such, it provides no justification for delaying transfer of possession, particularly in light of the United States' ongoing efforts to consult with landowners.[3]  The United States is committed to making a concerted effort to inform landowners about the process and to minimize the impact of the project.

Transferring possession will not interfere with the ongoing consultation efforts.  While some items involved in consultation may appropriately be treated as terms of possession, their complete satisfaction is neither a legal nor a practical prerequisite to transfer of possession – particularly where such terms entail detailed discussions with dozens of adversarial landowners.

_____

[3] The plain language of the 8 U.S.C. § 1103(b) makes clear that its consultation clause is no defense to this condemnation action.  "Nothing in [the consultation subparagraph] may be construed to . . . . affect the eminent domain laws of the United States."  2008 Consol. Appropriations Act, section 564 (121 Stat. 2090), to be codified at 8 U.S.C. § 1103(b) & note. Indeed, this Court rejected similar defenses in earlier rulings.  The consultation clause of the 2008 Consolidated Appropriations Act "is not a defense to a condemnation action."  *1.04 Acres of Land*, No. 1:08-cv-4s4, slip op. at 29; *see also United States v. 162.20 Acres of Land, More or Less, Situated in Clay County, Miss.*, 639 F.2d 299, 304–05 (5th Cir. 1981).  While the United States will continue to consult with landowners as required by 8 U.S.C. § 1103(b) in the course of this border security project, the consultation clause "is not a defense to the Government's acquisition of a property interest" here.  *1.04 Acres of Land*, No. 1:08-cv-44, slip op. at 30. Further, nothing in the statute indicates consultation must be conducted and completed prior to condemnation, much less prior to transfer of possession.

9

**IV.    Items Related to Just Compensation Need Not and Should Not Be Resolved Prior to the Transfer of Possession to the United States.**

Issues related to compensation are appropriately addressed after transfer of possession.  The bifurcated nature of federal condemnation cases provides a forum for Defendants to address just compensation and any concomitant issues, after affirmation of the United States' right to take.  Requiring these discussions pre-taking contradicts case precedent and permits discovery relevant only to impermissible defenses.  Defenses to the takings are founded in law and need no discovery.

Moreover, Defendants' interest in receiving just compensation is fully protected under the Declaration of Taking Act after the transfer of possession.  The statute

> empowers the Government, "at any time before judgment" in a condemnation suit, to file "a declaration of taking signed by the authority empowered by law to acquire the lands [in question], declaring that said lands are thereby taken for the use of the United States." The Government is obliged, at the time of the filing, to deposit in the court, "to the use of the persons entitled thereto," an amount of money equal to the estimated value of the land.  Title and right to possession thereupon vest immediately in the United States. In subsequent judicial proceedings, the exact value of the land (on the date the declaration of taking was filed) is determined, and *the owner is awarded the difference (if any) between the adjudicated value of the land and the amount already received by the owner, plus interest on that difference*.

*Kirby Forest Indus.*, 467 U.S. at 5–6 (emphasis added).  Indeed, here the United States' deposit of estimated just compensation is already in the Court's registry.  Thus, just compensation concerns have no legal or practical place in the decision of whether to transfer possession.

Finally, some items encompassed within the terms of possession, such as gate logistics and definition of the larger parcel, may affect the "before and after" valuation.  However, such impacts are commonly addressed in the valuation phase – after the United States has received possession.

**V.    Rule 71.1 Appropriately Sets the Hearing on Compensation as the Deadline to Name Additional Parties.**

Under Rule 71.1(c)(3), the United States may add appropriate defendants until the hearing

on compensation.  If other appropriate defendants are identified in the future prior to the hearings

on compensation, Rule 71.1 allows the United States to add them.  Accordingly, any earlier deadline,

such as the August 22 deadline set in sixteen similar cases in Brownsville, Texas, is inconsistent

with the federal rules.

### Conclusion

For the foregoing reasons, The United States requests that this Court adopt a scheduling

order that permits the Government to seek expedited possession of the subject property and reserves

the resolution of the legal issues presented by landowners for the valuation stage of the litigation.

Respectfully submitted,

DONALD DeGABRIELLE, JR.
UNITED STATES ATTORNEY

By:        /s/  *Marcus D. Campbell*
          MARCUS D. CAMPBELL
          Assistant United States Attorney
          Minnesota Bar No: 0276091
          919 Milam, Suite 1500
          P.O. Box 61129
          Houston, Texas 77208
          Tel:  (713) 567-9731
          Fax:  (713) 718-3303
          E-mail: marcus.campbell@usdoj.gov

          Attorneys for the United States of America

### Certificate of Service

I hereby certify that on August 26, 2008, I electronically filed the foregoing with the Clerk
of the Court using the CM/ECF system which will send notification to all counsel of record.

/s/  *Marcus D. Campbell*
MARCUS D. CAMPBELL
Assistant United States Attorney