```
                    IN THE UNITED STATES DISTRICT COURT
                       SOUTHERN DISTRICT OF TEXAS
                          BROWNSVILLE DIVISION
 _____
                                       )
UNITED STATES OF AMERICA               )
                                       )
                                       ) CIVIL ACTION NO.
VS.                                    ) M-08-207, M-08-213
                                       )
1.71 ACRES OF LAND; PAMELA RIVAS       )
 _____)


                         TELEPHONIC CONFERENCE
                  BEFORE THE HONORABLE ANDREW S. HANEN
                           JANUARY 29, 2009

APPEARANCES:

For the Plaintiff:          MR. DANIEL DAVID HU
                            MR. MARCUS D. CAMPBELL
                            U.S. Attorneys Office
                            919 Milam, Suite 1400
                            Houston, TX

For the 213 Defendants:     MR. DAVID C. GARZA
                            Garza and Garza
                            680 E. St. Charles, #300
                            Brownsville, Texas  78520

For the 207 Defendants:     MR. ROBERT LEE DRINKARD
                            Denton, Navarro, Rocha & Bernal
                            701 E. Harrison St., Suite 100
                            Harlingen, Texas  78550



Transcribed by:             BARBARA BARNARD
                            Official Court Reporter
                            600 E. Harrison, Box 301
                            Brownsville, Texas  78520
                            (956)548-2591
```

1          THE COURT:  This is Judge Hanen.

2          MR. HU:  Your Honor, Daniel Hu.

3          MR. CAMPBELL:  Marcus Campbell, Your Honor.  Hello.

4          MR. GARZA:  Good afternoon, Judge.  David Garza.

5          MR. DRINKARD:  Good afternoon, Judge.  Robert Drinkard.

6          THE COURT:  Well, counselors, thanks for being on the
7    phone with me.  This was a hearing -- and let me for the record
8    state I'm sitting here with my court reporter, so this is on the
9    record.  This is a hearing in M-08-213, United States versus
10   .61 acres of land and Pamela Rivas, and that's the case that
11   Mr. Hu and Mr. Garza are involved with.

12       And then we have United States versus 1.71 acres of land and
13   the City of Roma, and that's the case with Mr. Drinkard and
14   Mr. Campbell.

15       So what I really wanted to get y'all together for was to
16   find out where we are on these cases.  And, quite frankly, is
17   there something the court needs to be doing on these?  And let's
18   start with the Rivas case.

19       Where are we on this, Mr. Hu?  And then, Mr. Garza, I'll let
20   you reply.

21          MR. HU:  Your Honor, procedurally we have a motion for
22   possession outstanding.  We've looked at it, and I conferred
23   with Mr. Garza yesterday to cure or at least address the one, I
24   think, objection that remains.  And the reason -- I realize
25   there are other objections currently pending, although those are

1   the same objections that this court has already ruled upon in
2   connection with 08-196, the companion Rivas case, and has,
3   nevertheless, overruled those objections.
4       But the one additional objection is that the survey showed
5   an additional little sliver of land being taken beyond what's
6   shown in the declaration of taking.  Last night I filed a
7   supplemental response acknowledging that Mr. Garza is correct,
8   that we do need to amend the declaration of taking to add that
9   property.
10      So where we are, Your Honor, is that the government will be
11  needing to amend the declaration of taking to add that
12  additional take.  But in the meantime, we would ask for the
13  property which falls within the declaration of taking, that the
14  court allow us to take possession of that property.
15          THE COURT:  All right.  What have we done about the
16  question, Mr. Hu, that Ms. Rivas has brought up about access to
17  the property?  Have we given her --
18          MR. HU:  Your Honor, we've met with Ms. Rivas.  We've
19  met with her counsel on that question.  Part of that is
20  ultimately going to hinge upon what the Department of Homeland
21  Security decides to do.  The current plans are at some point in
22  the future, although we do not know when in the future, they
23  would like to build a fence, in which case that access question
24  may need to be addressed again.  And if access is severed, that
25  would be part of just compensation, and she would be compensated

1  at that time for the lack of access.
2       On the other hand, if CBP were to decide not to go forward
3  with the fence but to look at other options, such as building a
4  road or border interdiction, as has been done in other parts of
5  the country, then I think that issue sort of goes away because
6  there will be no impediment to access because there will be a
7  road there.
8       So in a sense the question is premature until CBP decides
9  what it wants to do.  But at the end of the day, even if they do
10 decide to limit access, that's an element of just compensation
11 and should be addressed at trial on that issue.
12           THE COURT:  Well, but obviously she's -- you know, do we
13 have any time frame that Homeland Security is going to, you
14 know, come to a conclusion on this?  Because I'm sure Ms. Rivas
15 would like to know.
16           MR. HU:  Your Honor, that's a question that, frankly, I
17 would like to know the answer to and, I would suspect, many of
18 the residents of Starr County would like to know as well.
19 Unfortunately, I don't have an answer for the court on when
20 they're going to reach that decision.
21      Part of it is they are working with the International
22 Boundary Water Commission to get around some hydrolic,
23 H-Y-D-R-O-L-I-C, problems related to building a fence in that
24 particular portion of the Valley.
25           THE COURT:  All right.  Mr. Garza, what's your take on

1  how things are going?
2       MR. GARZA:  Well, Your Honor, I don't know.  We've been
3  working well.  I would just refer the court to the government's
4  advisory, which was their document No. 17 filed on November the
5  6th, which is what the court raised right now.  I mean, they're
6  not sure what they're going to put there, and so I don't see the
7  urgency of having possession granted to them until such time as
8  we know what's going to go there because that may change, you
9  know, our position.  I mean, initially we understood a fence was
10 going to go there, and now we're not sure what's going to go
11 there.
12      THE COURT:  Well, Mr. Hu, what's the downside of us
13 waiting?
14      MR. HU:  The downside, Your Honor, is twofold.  One is
15 when a decision is made in preparation -- I should say -- let me
16 back up.
17    Part of what needs to be done in order to decide whether a
18 fence can be there or not, in my understanding, is more hydrolic
19 studies.  As a result, obviously access to the property will be
20 necessary to perform those studies; and possession, of course,
21 will allow us access to do that work.
22      THE COURT:  Well, Mr. Garza, is there any reason
23 Ms. Rivas won't allow them access, I mean, without me going
24 forward?
25      MR. GARZA:  I'm sure I could talk to my client, Your

1  Honor, and let her know that if we continue to give access
2  without a possession order as such, that that would be my
3  recommendation.  I hope she would follow my recommendation.
4          THE COURT:  All right.  Well, why don't we do that.  I
5  mean, let's don't -- let's find out -- and the reason, Mr. Hu --
6  and I understand it's sure a lot easier from your standpoint to
7  get the land and then figure out what to do with it, but it's --
8  it's hard when you're the defendant in Mr. Garza's position, I
9  think, and he can correct me if I'm wrong, to even advise your
10 client what to do if you don't know what's going to be there.
11         MR. HU:  Well, Your Honor, I think the plan -- and the
12 current plan, and that has not changed, is the government wants
13 to build a fence there.  So in that sense, the question is just
14 when we're going to start building and construction, and that's
15 the 10,000 -- a number of these engineering studies.  So I don't
16 think there's really been -- I think Ms. Rivas and the public
17 should plan on a fence being there at some point in the future.
18 The question is more one of timing at this point.
19         THE COURT:  Well, why don't I do this.  I'm not going to
20 go forward on this, Mr. Hu.  But when the engineering studies
21 are done, why don't you come back to the court and to Mr. Garza
22 and say:  All right.  We've done our engineering studies.  It
23 looks like we can build a fence here.  We're ready to go
24 forward, and we're going to inform the court that this is now
25 something that we need to be active with.

```
 1            And in the meantime, Mr. Garza, if you will speak with
 2   Ms. Rivas and get her permission for them to get whatever assess
 3   they need to run these tests.
 4            MR. GARZA:  I will, Your Honor.
 5            THE COURT:  Okay.
 6            MR. HU:  Your Honor, that poses -- the court is denying
 7   possession at that time, you know.  I understand the court's
 8   order.  But the question then is we're under a docket control
 9   order with a trial setting.  We're supposed to have appraisals
10   done.  This puts us in a bit of between a rock and a hard place
11   because until we sort of get on the property and do the
12   construction, it's going to be hard for our appraiser to decide,
13   you know, what's the before and after value of the takage.  So I
14   would ask that if the court is going to not rule on possession
15   at this time, we could suspend the other deadlines.
16            THE COURT:  Any objection to that, Mr. Garza?
17            MR. GARZA:  No, Your Honor.
18            THE COURT:  Okay.  I'll do that then.  I'm suspending
19   the deadlines on it.  And then, Mr. Hu, when you come back,
20   we'll reimpose new deadlines.
21            MR. HU:  Okay.
22            THE COURT:  And that way there will be an order that
23   governs this that's timely.  But, I mean, I don't know how you
24   can appraise it, because I'm sure the damages would be, you
25   know, one thing one way if it was going to be a fence and
```

1  completely different if it's going to be a road.
2          MR. HU:  All I can say, Your Honor, having worked on
3  some of the appraisal issues regarding access in other parts of
4  the Valley, if it was going to be a road versus a fence, it
5  would be a very different appraisal dynamic.
6          THE COURT:  Oh, I'm sure.  Quite frankly, I don't know
7  anything about this particular piece of property necessarily,
8  but in some areas, building a road would actually improve the
9  value of the property.
10         MR. HU:  But I want to make it clear for the court and
11 the record that Department of Homeland Security wants to build a
12 fence on this land, wants to do it as soon as possible.  They
13 just have this -- these engineering problems.
14         THE COURT:  Okay.  And I understand that.  And,
15 Mr. Garza, you understand that as well.  But, I mean, if these
16 engineering problems turn out to be insurmountable, then we have
17 a whole new ball game.
18     All right.  Well, then, having done this on Ms. Rivas' land,
19 is there anything else?  I mean, sounds like we can just move on
20 to the City of Roma case unless there's anything, Mr. Garza, you
21 and Mr. Hu want to bring up while we're still on this case.
22         MR. GARZA:  Well, Your Honor, not on this case.  And I
23 know that the companion case wasn't on the docket, but I think
24 the court did enter a possession order on the other one, but I
25 think it's still in that same Catch 22 of the fence and so

1  forth.  So I assume that Mr. Hu would not oppose extending the
2  deadlines on that other case, even though a possession order has
3  been granted.
4          MR. HU:  We would not.  We would actually join in
5  Mr. Garza's request to suspend all deadlines in both M-08-196,
6  which is the companion case, and M-08-213, which is this case,
7  until I notify the court about, you know, what's going to
8  happen.
9          THE COURT:  Okay.  All right.  I'll grant that.
10         MR. GARZA:  Thank you, Your Honor.
11         MR. HU:  Your Honor, will there be anything else on
12 Rivas, or may I be excused?
13         THE COURT:  If you guys don't have anything else, I'm
14 done, so you may be excused.
15    Oh, wait, wait.  Mr. Hu, are you still there?
16         MR. HU:  Yes, Your Honor.
17         THE COURT:  While I have you on the phone, Mr. Campbell
18 may know the answer to this, but are there other cases, not
19 these two cases necessarily, but other cases that the court
20 hasn't entered scheduling orders on that I need to be concerned
21 with?
22         MR. HU:  Your Honor, there are a number of cases that
23 the court hasn't entered scheduling orders on.  Where we are on
24 most of them is we are negotiating for the most part amicably
25 with the opposing parties, and no one is really pressing for

1  trial settings.  We had one recently, I think it was the Koppel
2  case, K-O-P-P-E-L for the record, where the parties did want a
3  scheduling order, and I believe we simply submitted an agreed
4  order, scheduling order to the court which the --
5         THE COURT:  Yeah, I've granted that.
6         MR. HU:  -- court signed.  But at the moment, I think
7  we're working very well with many, many landowners.  I think of
8  the 200-some-odd-cases, 250 cases that are pending, a good
9  portion, well over a hundred, you know, are settled or close to
10 being settled without the need to even get to a scheduling
11 order.
12        THE COURT:  Okay.  All right.  Well --
13        MR. GARZA:  Your Honor, Mr. Garza again.  I know that
14 they're not on the schedule, but I will say on the other three
15 cases that I have which involve Cameron County, I have been
16 working closely with the government attorneys, and I think we're
17 making progress and hopefully resolving one, two, or maybe all
18 three of them.
19        THE COURT:  Good.
20        MR. GARZA:  On one the court recently granted our joint
21 motion for extension of deadlines, and we anticipate in the
22 other two cases doing the same thing while we continue trying to
23 negotiate a resolution.
24        THE COURT:  Excellent.  Okay.  All right.  Well, Mr. Hu,
25 I'm going to depend on you and the defense counsel in these

1   cases to apprize me if a deadlock is reached and so we can go
2   ahead and fix a scheduling order so these things can move
3   forward.
4           MR. HU:  Certainly, Your Honor.  And for whatever it's
5   worth, Your Honor, the Borzynski case, I believe it's set next
6   Tuesday for a status conference.  And the reason I bring that up
7   right now is I will be having a representative from DHS from
8   Washington with me; and if the court, you know, has some
9   specific points the court might want to raise with DHS about
10  both intentions and also scheduling, that might be the
11  appropriate opportunity.
12          THE COURT:  Okay.  Great.  Excellent.
13     All right.  Let's switch over then.  And, Mr. Hu, you're
14  excused then.
15          MR. HU:  Thank you, Your Honor.  I have a flight out of
16  Brownsville in about an hour.
17          THE COURT:  Okay.
18          MR. GARZA:  May I be excused, Your Honor?  Or I don't
19  mind staying on the line if you want me to.
20          THE COURT:  Either one.  Your option.
21          MR. GARZA:  Thank you, Your Honor.  I think I'll go
22  ahead and retire.
23          THE COURT:  I can't believe that was your choice.
24          MR. HU:  Thank you, Judge.
25          MR. GARZA:  Thank you, Judge.

1    THE COURT: All right. Mr. Drinkard, Mr. Campbell,
2    where are we on the City of Roma case? Obviously I'm concerned
3    about that water pumping station.
4    MR. CAMPBELL: Your Honor, we're in a similar situation
5    with regard to the wall plans. There was, of course, the change
6    in direction for a while with regard to building a wall, and
7    we're in the same position as Mr. Hu's case is in. Basically
8    they still want to build a wall; but because of the additional
9    problems, they're not sure when that wall is going to go up.
10   On the basic scheduling order, we've responded to their
11   discovery. We've been propounded discovery, and we're moving
12   forward with depositions along with time that their discovery
13   responses will be due. And, of course, we'll progress on from
14   there.
15   But as far as possession, we're still looking for possession
16   as well. And I think after talking to Mr. Drinkard yesterday,
17   that we have an understanding regarding possession, even though
18   we haven't hammered anything out. I'm not sure that their
19   opposition as stated in their brief is still the same, so I'll
20   defer to him to elaborate on that.
21   MR. DRINKARD: Yes, Your Honor. We never have been
22   opposed to access. I mean, they can come in there any time they
23   want and do any tests they want. The only concern we've had is
24   with regard to that water pump. While they're down there, while
25   they're constructing or doing what they're doing, we got to have

1   24/7 access.  I mean, we're not going to be down there.  We may
2   never be down there.  But if there's a problem, these guys have
3   to be able to get down there to work on it.  And that's been the
4   problem.  They sent me a proposal at one point which required 48
5   hour advanced written notice, which is just obviously not -- I
6   mean, that's not feasible.  We don't have a problem with them
7   taking possession as long as they can guarantee that we can get
8   down there to the water pump whenever we need to get down there.
9           THE COURT:  Mr. Campbell, here's -- there's got to be
10  some way they can get down there on an emergency basis.  Now,
11  for routine maintenance, Mr. Drinkard, I don't see any reason
12  why you can't give 48 hours notice.  And I assume, unless you
13  tell me there's a reason, that the city doesn't have a problem
14  with that for routine stuff.  Stuff you know you're going to be
15  in there every three months, we're going to do X.
16          MR. DRINKARD:  I doubt that would be a problem, Your
17  Honor.
18          THE COURT:  But I assume your problem is what if the
19  pump shuts down or there's an emergency or something breaks and
20  we need to get in there and fix it.
21          MR. DRINKARD:  That's correct.
22          THE COURT:  And, Mr. Campbell, what can we do to
23  accommodate them?  Because I think that's a very legitimate
24  problem that the city has there.
25          MR. CAMPBELL:  In our proposal I wrote in a provision,

1  and I tried to make it as specific as possible without trying to
2  read tea leaves, Your Honor.  But our expectation was that they
3  would be able to really have free access most of the time.  The
4  only thing was we didn't want to create a situation where we
5  build the expectation without creating an understanding that we
6  have to have free communication.  So I still can't get much more
7  certainty, but I know they don't plan to build any rigid
8  structure that would limit access.  Our primary concern was
9  making sure that during regular business hours, that we weren't
10 going forward with projects that were just destined to conflict
11 without talking to one another.  And that was pretty much the
12 spirit of what I tried to put down on paper.
13          THE COURT:  Well, why don't y'all get together and see
14 if you can come up with some language that works, keeping in
15 mind that, you know, I've expressed my feelings here:  That for
16 emergency purposes, the city has got to have access.  But for
17 routine purposes, you know, y'all can work it out, you know.
18 And I don't care if it's 48 hours notice, and I don't care if
19 it's phone calls or written.  I mean, y'all can work out
20 whatever is reasonable and whatever works.  But there has to be
21 some emergency access provision for the city to get to the pump,
22 okay?
23          MR. CAMPBELL:  Yes, sir.
24          THE COURT:  All right.  And once you do that,
25 Mr. Campbell, if you'll send me basically an amended motion for

1    possession that explains to me what the deal is, you know, I'll
2    move forward on that.
3            MR. CAMPBELL:  Thank you, Your Honor.
4            MR. DRINKARD:  Your Honor, do you want to -- and I
5    anticipate us being able to reach some kind of agreement.  But
6    in light of how the case before us went, do you want to suspend
7    the deadlines in this case as well until we get something firm
8    to you?
9            THE COURT:  Well, Mr. Campbell, is there a -- well, it's
10   really two different issues, Mr. Drinkard, the way I look at it.
11   The possession order, if you've got an agreement on it, I can go
12   ahead and move on that.
13           MR. DRINKARD:  Okay.
14           THE COURT:  I don't have a problem with that.  Now, but
15   what may be a problem, though, is the deadlines may present a
16   problem if -- you know, about getting experts ready for trial
17   and appraisals and things like that if there's any question
18   here, Mr. Campbell, of whether there's going to be a wall or
19   not.
20           MR. CAMPBELL:  And that's a problem, Your Honor.  Of
21   course, Mr. Hu has a more global perspective, but I'm
22   thinking -- he, of course, will correct me if I'm wrong.  What
23   I'm thinking is that in each of these cases that have less
24   definitive deadlines for when the wall is going to go up, just
25   quite naturally because we're still under time pressure for the

1  higher priority cases, it's going to be tougher to figure out
2  when we can get appraisals done on cases like this.  And so in
3  the same, you know, way, I'm kind of on the same page with
4  Mr. Drinkard.  We're just kind of uncertain.  But, of course,
5  the deadlines you set are the deadlines we have to live under,
6  so...
7            THE COURT:  All right.  Well, why don't I do this.  Why
8  don't I suspend the trial schedule deadlines in this case as
9  well, and -- but I do want y'all to go ahead and work out this
10 access issue, because that's going to be important for the city.
11           MR. DRINKARD:  Okay.  I think we can do that.
12           THE COURT:  All right.  And I'll enter an order that
13 basically -- and what I need y'all to do then is when everything
14 is worked out and you're ready to move forward, just -- you
15 know, you can even do it by letter that both of you sign it and
16 send me a letter saying:  Judge, we need to either have a
17 hearing or reinstitute deadlines, and let's move forward on
18 this.
19           MR. CAMPBELL:  Okay.
20           MR. DRINKARD:  We can do that.  We're okay with that.
21           THE COURT:  Anything else that we can resolve then in
22 08-207?
23           MR. CAMPBELL:  I think that's it.
24           MR. DRINKARD:  I think that does it, Your Honor.
25           THE COURT:  All right.  Thank y'all.

```
 1              MR. CAMPBELL:  Thank you.
 2                            * * *
 3         (End of requested transcript)
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1
 2                              -oOo-
 3      I certify that the foregoing is a correct transcript from
 4  the record of proceedings in the above matter.
 5
 6  Date:  February 12, 2009
 7
 8
                                    /s/_____
 9                                  Signature of Court Reporter
                                    Barbara Barnard
10
```